IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**HONORABLE WENDELL GRIFFEN**                                          **PLAINTIFF**

V.                                          4:17CV00639 JM

**HONORABLE JOHN DAN KEMP, et al,**                         **DEFENDANTS**

### ORDER

Pending is Plaintiff Honorable Wendell Griffen's Motion to Disqualify Pursuant to Title 28, Section 455 of the United States Code (ECF No. 10). Separate Defendant Hart has responded and the remaining Defendants have indicated they do not intend to respond. For the reasons stated below, the motion is denied.

A judge must recuse himself if his "impartiality might reasonably be questioned," but he has an equal obligation not to recuse himself when there is no reason to do so. 28 U.S.C. § 455(a); *Southwestern Bell Telephone Co. v. F.C.C.*, 153 F.3d 520, 523 (8th Cir. 1998). The test for disqualification in the Eighth Circuit is as follows: "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case." *United States v. Aldridge*, 561 F.3d 759, 764 (8th Cir. 2009) (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc); accord *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (considering how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person")).

1

Every judge takes an oath to fairly and impartially preside over cases. Implicit in that oath is the notion that every judge will search their heart and mind to determine if they can live up to that oath in any particular case. I have done so in this case and have concluded that I can, and will, live up to the oath. Furthermore, an objective review of the issues brought to bear in Plaintiff's motion do not lead me to the conclusion that I should disqualify pursuant to 28 U.S.C. § 455.

Plaintiff relies on 28 U.S.C. § 455 as his basis to disqualify me as the judge in this matter. He acknowledges that I am not "actually biased for or against Judge Griffen, judges in the Sixth Judicial [District], or any other jurist in this matter. . . ." (ECF No. 11 at p. 4). Instead, he claims that an attentive public potentially could perceive prejudice based mostly on historical connections between Plaintiff and me, or between other judges and me, who worked in the Pulaski County Circuit Court. He indicates that these trial judges, while not parties, might be called as witnesses. Plaintiff suggests various other reasons for my disqualification including his concern that the public could question the outcome of the case. Since any analysis of Section 455 should be "fact-driven" and "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue," I will address Plaintiff's contentions in order to set forth the facts and circumstances regarding the nature of my connections with the parties and participants and my knowledge of his case or the lack thereof. *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995) (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)).

In Section II of Plaintiff's brief, he suggests that because Judge D.P. Marshall Jr. and Chief Judge Brian Miller recused in this case, I should do so as well. However, Judge Marshall and Judge Miller had a different connection with the parties in this case. Judges Marshall and

Miller served on the Arkansas Court of Appeals with judges who are parties on both sides of this lawsuit. While doing so, they were required to serve together on panels and collaborate on decisions and opinions. They voted on the outcomes of appeals. In other words, it was necessary that they actually work together on a regular basis. In contrast, the trial court judges in the Sixth Judicial District each have their own dockets and staff. Each division acts independently of the others in coming to decisions on cases. There is no collaborative decision-making process. Every judge's office is, in effect, an island unto itself. Plaintiff suggests that he and I worked alongside each other while we were circuit judges. In reality, we worked in the same building and shared the same job title. We never consulted with each other on any case. We did not share a docket. We worked on different floors. I can recall no more than half a dozen times that I came into contact with Plaintiff while we worked at the courthouse together from 2011 through February, 2014. While each of those times were cordial, they consisted of no more than polite greetings. Further, I have no prior relationship, either personal or professional, with any Defendant.

Plaintiff next mentions the fact that we both practiced law at the same law firm from August of 1989 to the end of 1995, twenty-two years ago. Much like the interaction at the Circuit Court, Plaintiff and I never worked on cases together. We practiced in different areas of the law. We worked on separate floors in a law firm that had fifty or more lawyers at any given time.

Plaintiff also asserts that my father was his mentor at the firm. I have no knowledge of that relationship but it was not uncommon for my father to mentor young lawyers.

Plaintiff also believes that my participation in case assignment plans while I was a circuit judge disqualifies me. There are five types of cases that can be filed in Pulaski County Circuit Court: Criminal, Civil, Domestic, Probate and Juvenile. After the passage of Amendment 80, the Supreme Court of Arkansas required each judicial district to submit a case assignment plan for

3

approval. I understood the purpose of the plan was to ensure all judges within a district had a similar caseload by volume. A new plan had to be submitted every time a new judge was elected and maybe more often than that. The plan would set out what percentage of the overall district caseload for each discipline would be assigned to each judge. It was a very simple process. As far as I know, the only thing that changed from plan to plan was an adjustment in the percentage of cases assigned to each judge based upon the overall volume of cases filed in the district. During the time I was part of the Sixth Judicial District, the administrative judge would get a consensus about the judges' collective desires. He would reduce that to writing and send it in letterform to the Supreme Court to ask for their approval. It is my memory that the Supreme Court routinely gave its approval to the Sixth Judicial District. I have no information about how the Supreme Court reviewed requests for approval. I do not know anything about the process of requesting approval beyond what I have stated. The Arkansas Supreme Court has never consulted me in making approval decisions.

I left the Sixth Judicial District at the end of February 2014. I do not know how many Sixth Judicial District case assignment plans have been in effect since I left. I have no information about the formulation of the 2017 plan that is the subject matter of this litigation.

Plaintiff asserts "upon information and belief" that I am close personal friends with the circuit judges who may be called as witnesses. While I have respect for everyone who serves in the courthouse, Plaintiff goes too far in concluding we are personal friends. The degree of interaction I have had with these potential witnesses does not chin the bar for disqualification under Section 455. Moreover, Plaintiff has requested a jury trial so I will not be the finder of fact in this case. Regardless, no relationship I have would interfere with the fair and impartial execution of my duties as presiding judge.

In conclusion, I appreciate Plaintiff's cautious reading of 28 U.S.C. § 455. However, to suggest that I should be disqualified from this case based on the limited and obsolete information I possess, would be tantamount to a suggestion that I am disqualified from presiding over a car wreck case because I possess a driver's license or an insurance coverage case because I have insurance. I have no knowledge, extrajudicial or otherwise, that would affect me in my duty to preside over this case. I find that my impartiality cannot reasonably be questioned by the average person on the street who knows all of the relevant facts of this case. The Motion to Disqualify (ECF No. 10) is DENIED.

IT IS SO ORDERED this 11th day of January, 2018.

_____
James M. Moody Jr.
United States District Judge