**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

_____
                                                          )
HONORABLE WENDELL GRIFFEN,                                 )
                                                          )
            Plaintiff,                                     )
                                                          )
        v.                                                )        No. 4:17-cv-639-JM
                                                          )        Hon. James M. Moody, Jr.
ARKANSAS SUPREME COURT, *et al.*,                         )
                                                          )
            Defendants.                                   )
_____)


**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTIONS TO DISMISS THE COMPLAINT**


January 23, 2018

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................1

ARGUMENT ...............................................................................................................3

I.      Judge Griffen Has Not Plausibly Alleged a Violation of His First
        Amendment Speech Rights..............................................................................3

        A.      The First Amendment Does Not Permit Judges to Preside Over Cases
                Where They Have Actual or Apparent Bias ........................................3

        B.      Even if the Retaliation Framework Applies, Judge Griffen Has Failed to
                State a Claim ........................................................................................9

II.     Judge Griffen Has Not Plausibly Alleged a Violation of His Free Exercise Rights..........14

III.    Judge Griffen Has Not Plausibly Alleged a Violation of His Due Process Rights ...........15

IV.     Judge Griffen Has Not Plausibly Alleged a Violation of His Equal Protection Rights.....18

V.      Judge Griffen Has Failed to State a Claim for Civil Conspiracy......................................21

VI.     Judge Griffen Has Not Plausibly Alleged a Violation of the Arkansas RFRA .................21

VII.    The Supreme Court of Arkansas Must Be Dismissed From This Case ............................22

CONCLUSION.......................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**  **Page**

*Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999) ......................................................22

*Arkansas State Med. Bd. v. Byers*, 521 S.W.3d 459 (Ark. 2017) .................................................23

*Bailey v. Department of Elementary & Secondary Educ.*, 451 F.3d 514 (8th Cir. 2006)..............13

*Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010)..........................................................3, 4, 8, 10, 11

*Board of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12 (2018)...................................................23

*Board of Trs. of Univ. of Ark. v. Burcham*, 2014 Ark. 61 (2014) .................................................23

*Brown v. Simmons*, 478 F.3d 922 (8th Cir. 2007)..........................................................................18

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)...................................4, 9, 13, 16, 17, 22

*Carter v. Arkansas*, 392 F.3d 965 (8th Cir. 2004) ........................................................................21

*Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085 (8th Cir. 2014) ........................................17, 18

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ......................................................................................8

*Gregory v. Ashcroft*, 501 U.S. 452 (1991).......................................................................................8

*Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797 (8th Cir. 2004)..............................................13

*Hutto v. Finney*, 437 U.S. 678 (1978)............................................................................................23

*Kelley v. Johnson*, 496 S.W.3d 346 (Ark. 2016) ..............................................................................5

*Ligon v. City of New York*, 736 F.3d 166 (2d Cir. 2013)..........................................4, 8, 11, 15, 16

*Lindsey v. City of Orrick*, 491 F.3d 892 (8th Cir. 2007)..................................................................8

*Lynch v. Massachusetts State Senate*, 495 F. Supp. 2d 175 (D. Mass. 2007)................................22

*Matter of Disciplinary Proceeding Against Sanders*, 955 P.2d 369 (Wash. 1998)......................11

*Mississippi Comm'n on Judicial Performance v. Wilkerson*, 876 So.2d 1006 (Miss. 2004) ........10

*Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011) .......................................4, 7, 11, 22

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ...............................................................................6

*Paul v. Davis*, 424 U.S. 693 (1976) ...............................................................................................16

*Pickering v. Board of Education*, 391 U.S. 563 (1968)....................................................................6

*Rankin v. McPherson*, 483 U.S. 378 (1987) ...............................................................................8, 14

*Republican Party of Minnesota v. White*, 416 F.3d 738 (8th Cir. 2005) ......................................22

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ..............................................13, 14

*Santee Sioux Tribe of Nebraska v. Nebraska*, 121 F.3d 427 (8th Cir. 1997)................................23

*Siegert v. Gilley*, 500 U.S. 226 (1991)...........................................................................................16

*Tabaddor v. Holder*, 156 F. Supp. 3d 1076 (C.D. Cal. 2015) .......................................................12

*Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468 (1987).....................................23

*Wersal v. Sexton*, 674 F.3d 1010, 1020 (8th Cir. 2012).....................................................14

*Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656 (2015) .........................................7, 21, 22

*Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895 (8th Cir. 1994).............................16

*Withrow v. Larkin*, 421 U.S. 35 (1975).......................................................................22

## Constitutions and Statutes

42 U.S.C. § 1988(b) .....................................................................................................23

ARK. CONST. art. V, § 20.............................................................................................23

ARK. CODE ANN. § 16-13-214 ....................................................................................18

ARK. CODE OF JUDICIAL CONDUCT

    Preamble .................................................................................................................8

    R. 2.11(A)(5)..................................................................................................4, 6, 18

## Other

16AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE
    § 3967.1..................................................................................................................18

Max Brantley, *Supreme Court orders immediate removal of Judge Maggio from bench*,
    ARK. TIMES (Sept. 11, 2014).................................................................................20

## INTRODUCTION

Judge Griffen's response to Defendants' motions to dismiss only further confirms that the complaint must be dismissed for failure to state a claim. Judge Griffen fails to come to grips with the interests of the litigants who come before him, focusing instead solely on his own desire to preside over their cases.

Imagine a case in which a judge authors an impassioned essay decrying legal challenges to the death penalty, insisting that the death penalty is morally required for all murderers because God's law demands that "life shall go for life," and the governing authority, as "the minister of God, a revenger to execute wrath upon him that doeth evil," is compelled to carry out the punishment. The judge therefore concludes that abolishing the death penalty would leave an indelible moral stain on the community until the end of time. Then, in a case pending before him, the judge summarily denies an emergency motion seeking to halt an execution and, immediately after issuing the order, plays a prominent part in a pro-capital punishment rally outside the offices of the legal defense organization responsible for the lawsuit. What is more, in a different case in which he is required by a higher court to halt an execution, the judge issues a strident opinion decrying that "damnable" fact. It is difficult to imagine anyone arguing that the judge nonetheless could continue sitting on death penalty cases, much less that he would have a constitutional right to do so. Yet that essentially is what Judge Griffen argues here, for this is that hypothetical case in reverse.

The relevant facts are undisputed. In April 2017, Judge Griffen publicly decried Arkansas' planned executions of several death row inmates, branding these executions as "murderous acts" and "a series of homicides." His statements were not limited to the particularities of these cases, but rather extended to a broad and impassioned condemnation of capital punishment altogether.

Four days later, he attended a rally protesting these executions. That same day, he entered an *ex parte* temporary restraining order effectively enjoining those executions. And then, immediately after entering the order, he participated in a protest outside the Governor's Mansion—one of the defendants in the pending case—to protest the very executions he had just effectively enjoined. Judge Griffen was not a passive participant in the protest but a centerpiece: he strapped himself to a cot as a condemned man for 90 minutes, surrounded by protesters and signs calling for an end to the very executions he himself had just enjoined.

Based on this extraordinary public display of partiality, the Supreme Court of Arkansas ordered Judge Griffen recused from capital punishment cases. Judge Griffen now raises a battery of theories about why he may not be recused despite his extraordinary conduct. None of these theories state a claim for relief. Judge Griffen effectively admits, as he must, that the First Amendment does not prohibit States from recusing judges whose speech indicates actual or apparent bias. This indisputable legal premise dooms Judge Griffen's retaliation claim, because the alleged retaliatory act—the recusal order—does not offend the First Amendment. Judge Griffen's complaint does not come close to plausibly alleging that the recusal order was motivated by his religious beliefs or his race, as opposed to his protests of the litigants and executions at issue in a case pending before him. He has failed to allege a liberty interest protected by the Due Process Clause, and in any event, he has an opportunity to contest the alleged stigma against him.

A judge, of course, need not shed his moral conscience upon assuming office. But that does not entitle a judge to hear cases in which his moral views are so strongly held and so insistently proclaimed that they call into question the judge's impartiality. For these reasons and others set forth more fully below, this Court should dismiss the complaint in its entirety.

# ARGUMENT

## I.   Judge Griffen Has Not Plausibly Alleged a Violation of His First Amendment Speech Rights.

Judge Griffen argues that he has stated a First Amendment retaliation claim because he plausibly alleged that he suffered an adverse action that was causally related to protected conduct. This argument fails on its own terms. But it also fails for the more fundamental reason that the alleged "retaliation"—an order recusing a judge whose speech creates an appearance of bias— does not violate the First Amendment.

### A.   The First Amendment Does Not Permit Judges to Preside Over Cases Where They Have Actual or Apparent Bias.

Judge Griffen alleges that he suffered unlawful retaliation for the exercise of his First Amendment rights when the Supreme Court of Arkansas disqualified him from hearing capital punishment cases because of his speech. But the First Amendment does not prohibit States from disqualifying judges whose speech indicates actual or apparent bias in a case. Indeed, Judge Griffen does not appear to dispute this point. That is the end of his retaliation claim. The First Amendment does not apply—or, to choose Judge Griffen's preferred framework, he has not engaged in protected conduct—because the First Amendment does not protect judges from disqualification when their speech creates an appearance of bias.

1.     This much is undisputed: The First Amendment does not prohibit States from disqualifying a judge when the judge's prior speech indicates actual or apparent bias. In fact, Judge Griffen affirmatively concedes that he "does not contend that *any* recusal rule violates his First Amendment rights." Plaintiff Hon. Wendell Griffen's Consolidated Opposition to Defendants' Motions to Dismiss at 16 (Jan. 16, 2018), Doc. 37 ("Response"). He must concede this point, because the law is settled that a "recusal clause does not present a constitutional issue at all." *Bauer*

*v. Shepard*, 620 F.3d 704, 718 (7th Cir. 2010); *see also Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 124 (2011) ("[T]here do not appear to have been any serious challenges to judicial recusal statutes as having unconstitutionally restricted judges' First Amendment rights."); *Ligon v. City of New York*, 736 F.3d 166, 169 n.8 (2d Cir. 2013).

Arkansas' recusal rules require disqualification where, *inter alia*, a "judge's impartiality might reasonably be questioned," including where the judge makes an out-of-court statement that "commits or appears to commit the judge to reach a particular result" in a case. ARK. CODE OF JUDICIAL CONDUCT, R. 2.11(A)(5). Judge Griffen alleges (implausibly) that he can decide death penalty cases without bias. But he does not allege *at all* that his conduct did not, at a minimum, create the *appearance* of bias. Defendants have emphasized this point, Brief in Support of the Hon. Courtney Hudson Goodson's Motion to Dismiss at 20, 22 (Dec. 19, 2017), Doc. 27 ("Goodson Motion"), and Judge Griffen has not disputed it.

In any event, Judge Griffen could not plausibly allege that his conduct did not create an appearance of bias. Indeed, if Judge Griffen's actions do not create at least an appearance of bias, it is difficult to imagine what would. The very same week that Judge Griffen enjoined several executions, he publicly declared on his blog that those planned executions were "murderous acts" and "homicide." He described those executions as "atrocities" that would cause "people around the world to associate Arkansas with bigotry, hate, and other forms of injustice as long as human memory continues." The very same day he enjoined those executions, he attended not one but two anti-death-penalty rallies. One of the rallies occurred immediately after he entered the injunction, and it occurred outside the residence of the Governor, one of the defendants Judge Griffen had just enjoined. At that rally, Judge Griffen strapped himself to a cot as a condemned man for 90 minutes

4

while he was surrounded by signs protesting the same executions he had just enjoined. These actions would undoubtedly cause a reasonable person to doubt Judge Griffen's impartiality.[1]

Judge Griffen's principal response is that he is not actually biased because, after the Supreme Court of Arkansas reversed his grant of summary judgment to the plaintiffs in the *Johnson* method-of-execution litigation, he then dismissed the second amended complaint. Response at 13. That order, which was accompanied by a lengthy coda lamenting the "damnable unfairness" of capital punishment, was compelled by the Supreme Court of Arkansas' decision in *Kelley v. Johnson*, 496 S.W.3d 346 (Ark. 2016).[2] That decision could not plausibly negate the powerful inference of bias created by Judge Griffen's later conduct, particularly in cases where the outcome is not so clearly compelled by binding precedent. More importantly, Judge Griffen's argument sidesteps the fact that his actions created an *appearance* of bias that his ruling in the *Johnson* case could not plausibly negate. *See* Arkansas Supreme Court et al. Motion to Dismiss at 16 (Dec. 19, 2017), Doc. 23 ("Ark. Supreme Court Motion") (discussing same argument in *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009)). A judge need not be willing to blatantly defy binding precedent to have his impartiality reasonably questioned.

The retaliation claim thus fails because (1) Judge Griffen does not dispute that the First Amendment permits States to disqualify judges whose speech indicates actual or apparent bias, and (2) Judge Griffen's conduct created, at a minimum, the appearance of bias. The alleged

---

[1] Although Judge Griffen claims Defendants have in some respects relied on facts outside "the four corners of the complaint," Response at 3, 11, 14, he correctly does not argue that the content of his blog posts or the substance of his protests are beyond the four corners of the complaint. Those issues are discussed in the complaint, *e.g.*, Compl. ¶¶ 16, 18 (Oct. 5, 2017), Doc. 1, and they are proper subjects of judicial notice too. *See* Goodson Motion at 5 n.2.

[2] *See* Goodson Motion, Exhibit C at 7 (Judge Griffen's order stating that "[t]he Second Amended Complaint must be dismissed because it is barred by the [Supreme Court's] decision that dismissed its predecessor").

"retaliation" is perfectly lawful. Indeed, Judge Griffen gives away the ballgame when he concedes that Defendants would have a "better argument if Judge Griffen *committed* to rule a certain way in capital cases . . ." Response at 13. The recusal rules demand disqualification not only when a judge's speech "commits" the judge to rule a certain way, but also when that speech "*appears to commit* the judge to reach a particular result." ARK. CODE OF JUDICIAL CONDUCT, R. 2.11(A)(5) (emphasis added). And Judge Griffen's speech certainly does that. Indeed, it is entirely reasonable to conclude that a judge who has called the death penalty a morally unjustifiable atrocity will do whatever he can to avoid facilitating executions. This case is thus precisely the case that Judge Griffen essentially concedes he cannot win.

Because the alleged retaliatory act—Judge Griffen's disqualification—is perfectly consistent with the First Amendment (and likely required by the Fifth Amendment), the disqualification order cannot serve as the basis for a retaliation claim. This would be a different case if Judge Griffen had alleged that some other speech was the basis for his claim—for example, if he had alleged that the Supreme Court of Arkansas actually disqualified him because he published a letter calling for citizens to vote the justices of that court out of their offices. *Cf. Pickering v. Board of Education*, 391 U.S. 563, 566 (1968). In that case, he would have alleged that he was retaliated against for exercising speech that was not proscribable. *Cf. O'Brien v. Welty*, 818 F.3d 920, 932–35 (9th Cir. 2016) (holding that although the plaintiff had no First Amendment right to harass school administrators, he adequately alleged a retaliation claim because he alleged he was in fact punished not for the harassing speech but for earlier protected speech).

But when a judge stands on the lawn of a defendant in a case before him and denounces the defendant for the very conduct at issue in the litigation, the judge is not "retaliated" against when he is disqualified from that case and other cases involving the same conduct. And if the First

Amendment does not protect the judge from disqualification, the judge cannot prevail simply by repackaging his claim as a "retaliation" claim.

This is the flaw with Judge Griffen's effort to distinguish cases like *Carrigan* and *Bauer* on the ground that they involved facial or as-applied challenges to recusal statutes rather than retaliation claims. Response at 15–16 & nn.4–5. Those cases are relevant because they establish that the alleged "retaliation" here is perfectly lawful: The First Amendment *permits* (and the Due Process Clause often requires) the supposedly "retaliatory" removal of judges from cases where they have actual or apparent bias. The First Amendment analysis does not change depending on whether a litigant argues that his disqualification was in retaliation for protected speech (a retaliation claim) instead of arguing that applying the recusal rule to him violates his First Amendment claim (an as-applied challenge to the rule). For example, the challenge in *Carrigan* could just as easily have been recast as allegedly unlawful "retaliation" against a legislator for exercising his First Amendment right to freedom of association with his campaign manager. *See Carrigan*, 564 U.S. at 120. Similarly, if *Williams-Yulee v. Florida Bar* had involved a sitting judge, the challenge there could have been recharacterized as unlawful "retaliation" against the judge for exercising his First Amendment right to free speech. *See* 135 S. Ct. 1656, 1667 (2015).[3] But the outcome of those cases would have been the same.

2.      Finally, Judge Griffen does not rebut Defendants' argument that the First Amendment does not protect him from disqualification because Arkansas may exercise the sovereign choice to assign cases only to Judges whose speech does not indicate actual or apparent

---

[3] *Williams-Yulee* denominated as furthering a "vital state interest . . . of the highest order" certain ethical rules that charge judges "with exercising strict neutrality and independence," requirements often not imposed on other elected officeholders. 135 S. Ct. at 1666. The Court further reiterated that " 'justice must satisfy the appearance of justice.' " *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

bias. As Defendants have emphasized (*e.g.*, Goodson Motion at 14–18), *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991) holds that States have the authority "to determine the qualifications of their most important government officials." Thus, as the Seventh Circuit has already held, recusal rules do not implicate the First Amendment because that Amendment does not interfere with a State's ability to "control how its employees perform their work" or "to assign to each lawsuit a judge who has not made any statement that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy." *Bauer*, 620 F.3d at 718 (quotation marks omitted). The Second Circuit has likewise held that "[t]he freedom of speech protected by the First Amendment does not mean that there can be no limitations, such as those contemplated under [the federal judicial recusal statute], on what a federal judge may say, much less on where she can say it, especially as it relates to pending litigation." *Ligon*, 736 F.3d at 169 n.8.

Similarly, *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), holds that *Pickering* does not protect an employee from alleged retaliation when the supposed adverse action occurs when a public employee "speaks pursuant to his job duties." *Lindsey v. City of Orrick*, 491 F.3d 892, 898 (8th Cir. 2007). First Amendment protections of government employees vary for that reason when the employee serves in a "confidential, policymaking, or public contact role," *Rankin v. McPherson*, 483 U.S. 378, 390–91 (1987), because even their private conversations implicate the government's public position and the discharge of the employee's job. The "burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails." *Id*. at 390. When the employee is a judge, his duties include the obligation to "avoid both impropriety and the appearance of impropriety in their professional *and personal lives*." ARK. CODE OF JUDICIAL CONDUCT, Preamble (emphasis added).

Indeed, this is not simply a matter of Arkansas' sovereign choice—recusal in case of actual or apparent bias is often *required* by the Due Process Clause. *See, e.g.*, *Caperton*, 556 U.S. at 881, 889.

The closest Judge Griffen comes to responding to this point is his argument that "discovery is needed to determine the proper scope of Judge Griffen's job responsibilities." Response at 14. He never identifies what discovery could possibly be relevant. The Arkansas statutes and Code of Judicial Conduct are crystal clear that judges may not preside over cases where their speech indicates actual or apparent bias. Discovery is not necessary to establish that point.

 **B.** **Even if the Retaliation Framework Applies, Judge Griffen Has Failed to State a Claim.**

Even if this Court accepts Judge Griffen's invitation to proceed directly to the retaliation framework, the complaint still fails to state a claim.

 1. First, for substantially the same reasons already discussed, Judge Griffen has not alleged that he engaged in protected conduct. The only speech at issue here is Judge Griffen's speech giving rise to an appearance of partiality. The First Amendment does not protect Judge Griffen's right to preside as a judge in a case in which his impartiality may reasonably be questioned.

Judge Griffen believes that he has alleged that he engaged in protected conduct for the simple reason that capital punishment is a matter of public concern. Response at 11–12. No one disputes that capital punishment is in fact a matter of public concern. The outcome of pending legal decisions is also a matter of public concern, but that does not mean that judges may opine, supposedly as "public citizens," on the cases before them, and still expect to preside over those cases. Judge Griffen's decision to prostrate himself on a cot as a condemned man in protest of the

executions he had just enjoined did address a matter of public concern, but that does not spare him from the reach of Arkansas' recusal rules.

Judge Griffen also relies on a series of cases stating that judges may announce their views on legal and political subjects. *See* Response at 12–13. The precise import of these cases is unclear because Judge Griffen does not dispute that judges may be disqualified when their speech gives rise to the appearance of bias. His cases are consistent with this rule, and many of them expressly endorse it. For example, *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010), upheld Indiana's prohibition against judges making promises or pledges that are "inconsistent with the impartial performance of the adjudicative duties of judicial office," *id.* at 714, and it further held that requiring recusal based on apparent impartiality "does not present a constitutional issue at all," *id.* at 718. Other than dismissing *Bauer*'s recusal-clause analysis as not involving a retaliation claim, Judge Griffen never addresses its holding that recusal rules do not violate the First Amendment.

Judge Griffen also relies upon *Mississippi Comm'n on Judicial Performance v. Wilkerson*, 876 So.2d 1006 (Miss. 2004), which held that a judge could not be sanctioned based on his out-of-court statements on gay rights. But there, the Court emphasized that although the judge could not be sanctioned, recusal in future cases might be required. The court explained that the judge "will doubtless face a recusal motion from every gay and lesbian citizen who visits his court," and that the judge has "created a paradox for himself" by "publicly announcing views which—although constitutionally allowed—nevertheless cast doubt on his impartiality." *Id.* at 1015–16. The court stated that it would "express no opinion here as to the outcome of such complaints, as the issue is not before us today." *Id.* at 1016. *See also id.* (agreeing that "the objects of judicial prejudice are entitled to seek a level playing field through recusal motions").

Finally, Judge Griffen relies on *Matter of Disciplinary Proceeding Against Sanders*, 955 P.2d 369, 376 (Wash. 1998), which also invalidated a misconduct sanction rather than a recusal order. The court invalidated the sanction only because the record did not permit the court "to construe Justice Sanders' conduct as . . . an indication that he would be unwilling or unable to be impartial and follow the law if faced with a case in which abortion issues were presented." *Id.* at 376. The Court thus recognized that if the judge's speech *had* created an appearance of partiality, the First Amendment would not protect the judge from sanction. Judge Griffen suggests that his decision to protest outside the Governor's mansion is akin to Sanders' decision to briefly address a crowd outside a legislative building before departing the rally. Response at 14; *see Sanders*, 955 P.2d at 376. But the facts of the two cases are very different, not least of all because when Sanders addressed the crowd, he was not presiding over an abortion case, much less one where the legislature was a party.

2.      Judge Griffen has also failed to plausibly allege that he suffered an adverse action. Judge Griffen claims that he suffered an adverse action because he suffered "permanent disqualification from all death penalty cases," Response at 18, as well as "a permanent garnishment of [his] judicial authority," *id.* at 20. But as Defendants have explained, *see* Goodson Motion at 14–18, Judge Griffen has no personal or constitutional right to decide death penalty cases or any other category of cases. *See, e.g.*, *Carrigan*, 564 U.S. at 126–27; *Bauer*, 620 F.3d at 718; *Ligon*, 736 F.3d at 171. Moreover, Judge Griffen *never* had the right to preside over cases where his speech indicates actual or apparent bias. Although Judge Griffen claims the right to "make case-by-case determinations relating to his ability to preside over a case with impartiality," Response at 20, he cites nothing at all suggesting that he has this authority, much less a personal or constitutional right to this authority.

Judge Griffen largely ignores this point. He seeks to distinguish *Carrigan* and *Bauer* on the ground that they involved First Amendment challenges to recusal rules rather than retaliation claims. Response at 15–16. But as discussed *supra*, this is a distinction without a difference. Judge Griffen seeks to distinguish *Ligon* on the ground that the Second Circuit held that the judge lacked a personal right to decide one particular case, whereas here he has been disqualified from all capital punishment cases. Response at 22. But if Judge Griffen does not have a legal interest in deciding any particular case, it is hard to see how he gains a legal interest in the aggregation of several such cases. Moreover, as Defendants have also explained (without response from Judge Griffen), many recusal orders are effectively blanket recusal orders from an entire category of cases. Goodson Motion at 5, 20–21.[4]

3.      Finally, Judge Griffen argues that he has plausibly alleged causation because nobody disputes that Defendants disqualified him from capital punishment cases because of his speech. Response at 23. Judge Griffen's argument is significant in two respects. First, the argument essentially acknowledges that the relevant facts are undisputed. This argument undermines Judge Griffen's suggestion elsewhere that some unspecified discovery is needed to resolve some unspecified factual disputes. *E.g.*, Response at 3, 14, 26. Second, and more importantly, Judge

---

[4] Judge Griffen also erroneously relies upon *Tabaddor v. Holder*, 156 F. Supp. 3d 1076 (C.D. Cal. 2015). The plaintiff was an immigration judge for the Executive Office for Immigration Review within the U.S. Department of Justice, who was recused from certain cases because of her attendance at a government-sponsored event held at the White House Office of Public Engagement that her supervisors preapproved. The recusal order was treated as an employment action that survived a motion to dismiss only because it was litigated against the background of rules governing civil service employees that have no application to judges in a state court system. *Tabaddor* did not address the argument, presented squarely here, that the judge's speech was not protected by the First Amendment. The court also dismissed the unsupported allegation of religious discrimination in that case, *id.* at 1090, as this Court should. Finally, Judge Griffen's allegation in his response brief that he has been subjected to a different "recusal standard entirely divorced from the standard applied to his peers," Response at 20, is belied by the fact that he cannot plausibly allege that his extraordinary conduct falls outside the scope of Arkansas' recusal rules.

Griffen's argument that he was disqualified because of his biased speech proves too much. His argument, if accepted, suggests that the State always engages in unlawful retaliation when it disqualifies judges from cases based on speech that indicates actual or apparent bias. This has never been the law. In fact, the Due Process Clause demands that it *cannot* be the law, because its application here is "to protect the parties' basic right to a fair trial in a fair tribunal." *Caperton*, 556 U.S. at 887. *See also Republican Party of Minnesota v. White*, 536 U.S. 765, 794 (2002) (recognizing that rigorous recusal standards can prevent harms that flow from unfettered exercises of judicial speech).

  4. Even if Judge Griffen has adequately pled that he engaged in public speech and that his speech was a motivating factor for an adverse action taken against him, he must still survive the *Pickering* balancing test and demonstrate that his "interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient public service." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004). Judge Griffen's complaint does not even invoke the *Pickering* test, much less allege that the balancing weighs in his favor. *See* Compl. ¶¶ 48–56. This balancing test presents "a question of law," even if "its underlying factual questions should be . . . submitted to the jury." *Bailey v. Department of Elementary & Secondary Educ.*, 451 F.3d 514, 518 n.2 (8th Cir. 2006). Judge Griffen argues that discovery is needed to complete the *Pickering* inquiry, Response at 17, but he never specifies what that discovery would be. The relevant facts are undisputed—Judge Griffen was disqualified because of his extraordinary display of impartiality and his violation of Arkansas' recusal rules—and the ultimate balancing is a question of law. Even if the Court were to conclude that it must engage in *Pickering* balancing, that inquiry resolves in favor of Defendants even at this stage of the case. The employer's interest in promoting a judiciary that is fair and creates an appearance of fairness is an interest of the

highest order, and it easily outweighs a judge's interests in expressing his biases and protesting the litigants who appear before him. What the Supreme Court has said of clerical employees applies with even greater force to judges: these employees are not "insulated from discharge where their speech, taking the acknowledged factors into account, truly injures the public interest in the effective functioning of the public employer." *Rankin*, 483 U.S. at 391 n.18.[5]

## II.    Judge Griffen Has Not Plausibly Alleged a Violation of His Free Exercise Rights.

Judge Griffen effectively abandons his free-exercise retaliation claim, as distinct from his free-speech retaliation claim. Defendants explained that the Free Exercise Clause does not afford Judge Griffen an exemption from Arkansas' neutral, generally-applicable recusal laws, and that Judge Griffen cannot plausibly allege that Defendants ordered his disqualification to suppress Judge Griffen's religious beliefs. *See* Goodson Motion at 21–25; Ark. Supreme Court Motion at 18–19. Judge Griffen does not address these arguments. Instead, he simply re-asserts his implausible allegation that he was retaliated against for exercising his religious beliefs. Response at 12, 17.

Defendants do not dispute that Judge Griffen was practicing his religion when he protested capital punishment and decried as "atrocities" the executions at issue in litigation before him. But the Free Exercise Clause does not entitle Judge Griffen to an exemption from Arkansas' neutral and generally applicable recusal rules. A judge must be recused from a case whenever the judge's actions indicate actual or apparent bias, regardless of whether the speech that creates the

---

[5] Judge Griffen suggests that States do not have a compelling state interest "in guarding against the appearance of impropriety." Response at 16 n.6. But the Eighth Circuit has already held that States have a compelling interest in preserving both "the lack of bias for or against a party to a proceeding" and "the appearance of impartiality." *Wersal v. Sexton*, 674 F.3d 1010, 1020, 1023–24 (8th Cir. 2012). The Supreme Court's decision in *White*, upon which Judge Griffen relies, said only that States do not have a compelling interest in ensuring a "lack of preconception in favor of or against a particular *legal view*." 536 U.S. at 777.

appearance of bias was motivated by the judge's religious beliefs. And Judge Griffen offers nothing to support his bald allegation that Defendants intended to punish him for the exercise of his religion. Compl. ¶ 65. There is simply nothing in the complaint that would support an inference that the Justices of the Supreme Court of Arkansas disqualified him from capital punishment cases to punish him for exercising his religion rather than to guarantee litigants a fair tribunal.

## III.   Judge Griffen Has Not Plausibly Alleged a Violation of His Due Process Rights.

Judge Griffen argues that the Due Process Clause guarantees judges the right to litigate and contest recusal orders, but he fails to cite a single case holding as much. Response at 27–32. The Second Circuit recently also stated that it "know[s] of no precedent suggesting that a district judge has standing before an appellate court to protest reassignment of a case." *Ligon*, 736 F.3d at 170. Judge Griffen's Due Process claim fails at the threshold.

1.     Judge Griffen's complaint alleges interests in "his ability to discharge those aspects of his position that are set forth in the Arkansas Constitution and that voters elected him to discharge," and in "his reputation and his good name as it relates to his duties as an elected circuit court judge." Compl. ¶¶ 81–82. His response brief fails to rebut Defendants' argument that he has not adequately pleaded a liberty or property interest recognized by the Due Process Clause.

*First*, Judge Griffen has no property or liberty interest in deciding any particular case. *See* Goodson Motion at 26–28; Ark. Supreme Court Motion at 15–16. Judge Griffen claims that this argument assumes that his speech "renders him biased—which is perhaps the most disputed fact question in this case." Response at 30. But Judge Griffen does not dispute that his speech creates the *appearance of bias*, and judges do not have a right to decide cases where they have actual bias *or* apparent bias. In any event, Defendants' argument does not depend on proving bias or the appearance thereof. The point is that "reassignment is not a legal injury to the [trial] judge" because

that "judge has no legal interest in a case or its outcome, and, consequently, suffers no legal injury by reassignment." *Ligon*, 736 F.3d at 171. And without an independent injury to a protected liberty or property right, it simply does not matter whether or to what extent the recusal order harmed Judge Griffen's reputation, for "injury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). That is because for a reputational injury to implicate the Due Process Clause and be actionable, it must be accompanied by "a right or status previously recognized by state law [being] distinctly altered or extinguished." *Paul v. Davis*, 424 U.S. 693, 711 (1976). Because Judge Griffen has no previously recognized right to sit on any particular case, the Due Process Clause is not implicated. *See* Ark. Supreme Court Motion at 16; Goodson Motion at 26–28.

Judge Griffen also suggests that this case does not involve mere "recusal" but rather "a permanent bar on adjudicating an entire class of highly significant cases." Response at 29. But if Judge Griffen lacks an interest in deciding any one case, it is hard to see why he has an interest in deciding an aggregation of those cases. The appearance of bias at issue is to a category of cases, not to a particular litigant. Simply put, judges do not have a due process right to decide the cases before them. To the extent the Due Process Clause is relevant at all, it can sometimes *prohibit* judges from presiding over cases where they have actual or apparent bias.

*Second*, even if Judge Griffen's liberty or property rights have otherwise been affected by the recusal order, he has not plausibly alleged that the recusal order is "so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." *Id*. In *Caperton*, the Supreme Court did "not question [the subject

judge's own] subjective findings of impartiality and propriety," and did not find the existence of any actual bias. 556 U.S. at 882. Instead, the Court was concerned with the overriding necessity of safeguarding the public's confidence that judicial decisions were based on the merits presented and not any possible prejudgment. *Id.* at 889. Therefore, an order of recusal did not impugn the judge's reputation, but assured that the justice system worked as it should for the litigants. Judge Griffen has not, and could not, allege the existence of a stigma flowing from the recusal order.

2. In any event, Judge Griffen was given all the process that was due. Judge Griffen was notified that the defendants in the *McKesson* case had sought his recusal. The Supreme Court of Arkansas even extended the filing deadlines in the case so that Judge Griffen could file a response. *See* Goodson Motion, Exhibit L at 8 (Dec. 12, 2017), Doc. 27-12. Judge Griffen claims that he alleges in the complaint that he "did not" "receive[ ] a copy of the Attorney General's petition prior to the entry of the Disqualification Order." Response at 31. To the contrary, the complaint admits that Judge Griffen "received service of a copy of the Attorney General's writ application seeking his disqualification from the *McKesson I* case . . . ." Compl. ¶ 84.[6] Although Judge Griffen does allege that he was not on notice that the Supreme Court of Arkansas might recuse him from cases other than *McKesson*, *id.*, the basis for his recusal from all capital punishment cases was precisely the same basis as his recusal from the *McKesson* case.

In any event, the Due Process Clause is not violated where the government employee has been afforded process in the form of a name-clearing hearing. *See, e.g.*, *Crews v. Monarch Fire*

---

[6] Because the complaint admits that Judge Griffen was on notice of the recusal petition, the Court need not rely on the email communications attached to the motions to dismiss that prove Judge Griffen had notice of those requests. The Court thus need not reach Judge Griffen's argument that it may not consider these materials at the motion-to-dismiss stage. Response at 32. Of course, the Court would be entitled to take notice of these documents, which are fairly incorporated into the complaint. *See* Goodson Motion at 5 n.2.

*Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014); *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007). Even assuming he was sufficiently "stigmatized" to implicate due process, Judge Griffen has not disputed that he has an opportunity to clear his name during ongoing proceedings before the Judicial Discipline and Disability Commission.

3.      Judge Griffen does not dispute that his due process argument would cause a sea change in the recusal laws. If his legal argument were correct, trial judges would have an absolute right to litigate recusal issues against the parties before them. This would turn recusal law on its head, for today a trial judge's uninvited response to a mandamus petition "in itself may sometimes be a factor that contributes to a conclusion that the trial-court judge's impartiality could reasonably be questioned." 16AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3967.1. This Court should not discover a novel due process right for judges to litigate recusal orders. Doing so would burden the judicial system with internal disputes that will delay and undermine its ability to dispense justice to those who come before it.

## IV.     Judge Griffen Has Not Plausibly Alleged a Violation of His Equal Protection Rights.

Judge Griffen has also failed to rebut Defendants' argument that he failed to state a claim for a violation of the Equal Protection Clause.

*First*, Judge Griffen misapprehends the issue when he suggests that he was "qualified for the job in question." Response at 33. Arkansas law prohibits judges from presiding over cases where they are "disqualified under the Arkansas Code of Judicial Conduct." ARK. CODE ANN. § 16-13-214. The Code of Judicial Conduct prohibits service by judges with actual or apparent bias. *E.g.*, ARK. CODE OF JUDICIAL CONDUCT R. 2.11(A)(5). Judge Griffen has failed to plausibly allege that his conduct falls outside the ambit of Arkansas' recusal rules. Accordingly, he is not qualified to preside over cases involving capital punishment.

18

*Second*, Judge Griffen has failed to establish that he was treated differently from similarly situated white judges, or that any differential treatment raises an inference of racial discrimination. Defendants emphasize, in the strongest possible terms, that Judge Griffen's wholly unsupported allegations of racial discrimination are thoroughly baseless and are simply bald legal conclusions entitled to no weight. The complaint does not come close to plausibly alleging that Defendants disqualified Judge Griffen for any reason other than his extraordinary conduct that gave rise to an unmistakable appearance of bias.

Judge Griffen has not identified any similarly situated white judges who were treated differently than he.[7] Indeed, Judge Griffen has not identified any judge of any race who has engaged in behavior even remotely close to the behavior at issue here. Although Judge Griffen's response brief cites the four comparators identified in his complaint, *see* Response at 34, he does not rebut Defendants' argument that these comparators were not similarly situated to him, Goodson Motion at 32–33. None of those comparators involved individuals for whom recusal was warranted because their speech indicated actual or apparent bias. Moreover, three of the comparators received *harsher* treatment than Judge Griffen because they left the bench entirely. It is hard to see how the harsher treatment of these white judges—their total removal from the bench—shows discrimination against Judge Griffen.

With respect to former judges Joseph Boeckmann Jr. and Timothy Parker, both were "permitted . . . to resign," Response at 34, after they left the bench amidst allegations of

---

[7] Judge Griffen claims that "Defendants acknowledge . . . that Judge Griffen has identified other similarly situated judges, who are white, and who have been treated differently from Judge Griffen." Response at 35. To the contrary, Defendants have argued that Judge Griffen's comparators "cannot be said to be similarly situated to Judge Griffen." Ark. Supreme Court Motion at 23. *See also* Goodson Motion at 31–32. Indeed, Judge Griffen's own complaint emphasizes that he "did not engage in conduct that was remotely similar to that allegedly committed by" the other judges. Compl. ¶ 115; *see also id.* ¶¶ 108, 112, 129.

impropriety, Compl. ¶¶ 114, 118, so there was no need for the Supreme Court of Arkansas to disqualify them from cases. With respect to former Judge Michael Maggio, the Supreme Court of Arkansas did "remove[ ] [Judge Michael Maggio] from the bench." Compl. ¶ 111. Moreover, it did so based in part on his comments in an online forum, which means that Maggio received much harsher punishment for what was in part a speech-related offense. *See* Max Brantley, *Supreme Court orders immediate removal of Judge Maggio from bench*, ARK. TIMES (Sept. 11, 2014), https://goo.gl/cZ6H3F.

Finally, Judge Griffen alleges that Judge William Pearson pled guilty to driving while intoxicated and reckless driving, and that he was suspended from presiding over driving-while-intoxicated cases for several months. Response at 34; Compl. ¶¶ 106–07. Judge Pearson is not similarly situated to Judge Griffen because his case involves a criminal conviction, not speech that gives rise to an appearance of bias. Judge Griffen engaged in speech that creates a patent appearance of partiality in capital punishment cases. By contrast, although Judge Pearson's criminal conviction was worthy of sanction, that conviction standing alone does not indicate that he would have longstanding partiality towards any particular side of a DWI case. While Judge Pearson broke the law, he did not engage in activity remotely analogous to that taken by Judge Griffen, such as publicly denouncing all DWI convictions as a stain on Arkansas or actively participating in a rally pursuing the abolition of all DWI convictions.

Although Defendants have emphasized these distinctions, *see* Goodson Motion at 31–33, Judge Griffen does not respond to them. Instead, he recasts Defendants' argument into the strawman that "Defendants are contending that Judge Griffen's complaint has not *proven* discrimination, but this is not required at the initial pleading stage." Response at 35. That is not Defendants' argument at all. Instead, Defendants argue that the complaint fails to identify similarly

situated persons, that most of Judge Griffen's allegedly similarly situated individuals were actually treated worse than he, and that the complaint does not give rise to a plausible inference of discriminatory intent. The Eighth Circuit has recognized that equal protection claims that fail to allege disparate treatment of similarly situated individuals must be dismissed under Rule 12(b)(6). For example, in *Carter v. Arkansas*, 392 F.3d 965 (8th Cir. 2004), the Court held that a plaintiff's equal protection claim must be dismissed for failure to state a claim because the plaintiffs' alleged comparators were not similarly situated to the plaintiff, and because even if they were similarly situated, the state's distinction between those groups was justified. *Id.* at 968–69.

## V.     Judge Griffen Has Failed to State a Claim for Civil Conspiracy.

Judge Griffen claims that he has stated a claim for civil conspiracy, but he does not dispute that if his constitutional claims fail, his conspiracy claim does as well. Response at 44–46. Because his constitutional claims lack merit, so too does his conspiracy claim. Finally, Defendants note that the complaint alleges only a conspiracy "to deprive Judge Griffen of equal protection of the laws" and not on the basis of his other constitutional claims. Compl. ¶ 132. Thus if the Court dismisses the equal protection claim, it must also dismiss the conspiracy claim.

## VI.    Judge Griffen Has Not Plausibly Alleged a Violation of the Arkansas RFRA.

For substantially the same reasons discussed in connection with the retaliation claims, Judge Griffen has failed to state a claim for a violation of the Arkansas Religious Freedom Restoration Act. Judge Griffen argues that discovery is needed to determine whether the recusal order is the least restrictive means to further a compelling governmental interest, Response at 26, but he never suggests what discovery could possibly be warranted here. "The concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by documentary record. But no one denies that it is genuine and compelling." *Williams-*

*Yulee*, 135 S. Ct. at 1667. And this interest clearly is implicated by this case. The relevant facts relating to Plaintiff's conduct come straight out of his own complaint and are not in dispute. Judge Griffen could not plausibly allege that his conduct did not create, at a minimum, an appearance of bias. Not only are recusal rules perfectly constitutional, *e.g.*, *Carrigan*, 564 U.S. at 124, but recusal is often *required* by the Due Process Clause, *e.g.*, *Caperton*, 556 U.S. at 881; *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). And the Eighth Circuit, while invalidating a prohibition on judicial candidates' partisan activities, held that when there is an inference of bias, "recusal is the least restrictive means of accomplishing the state's interest in impartiality articulated as a lack of bias for or against parties to the case." *Republican Party of Minnesota v. White*, 416 F.3d 738, 755 (8th Cir. 2005). The Arkansas RFRA does not liberate Judge Griffen from Arkansas' recusal orders, at least not under the undisputed facts of this case. Simply put, no further discovery is necessary for this Court to conclude that Judge Griffen has not adequately pled a violation of the Arkansas RFRA.

## VII.    The Supreme Court of Arkansas Must Be Dismissed From This Case.

To avoid dismissal of the Supreme Court of Arkansas as a defendant, Judge Griffen asserts that the court is solely a defendant with respect to Count III, the alleged violation of the Arkansas RFRA. Response at 38. This argument fails because the Supreme Court of Arkansas is entitled to Eleventh Amendment immunity. "[T]he Eleventh Amendment prohibits federal courts from hearing cases brought against states or their officers under state law . . . [unless] the relevant state law contains a provision specifically authorizing suit against the state to proceed in federal court." *Lynch v. Massachusetts State Senate*, 495 F. Supp. 2d 175, 179 (D. Mass. 2007). *See also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999).

Here, nothing in the Arkansas RFRA authorizes suit in federal court by providing the necessary "clear and unequivocal" waiver of Eleventh Amendment immunity. *See Santee Sioux Tribe of Nebraska v. Nebraska*, 121 F.3d 427, 430 (8th Cir. 1997) (citation omitted). Further, "a State does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473–74 (1987). Judge Griffen offers no argument that the State or Supreme Court of Arkansas has clearly and unequivocally waived its Eleventh Amendment immunity.

Moreover, the legislature is without power to authorize suit in state court. The Arkansas Constitution provides the State "shall never be made defendant in any of her courts." ARK. CONST. art. V, § 20. Under this provision, "a suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability." *Arkansas State Med. Bd. v. Byers*, 521 S.W.3d 459, 462 (Ark. 2017). *Cf. Board of Trs. Univ. Ark. v. Burcham*, 2014 Ark. 61 (employee's wrongful-termination complaint barred by sovereign immunity and no sovereign-immunity exception applied). *See also Board of Trs. Univ. of Ark. v. Andrews*, 2018 Ark. 12, 2018 WL 458031, at *5.[8]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Judge Griffen's complaint in its entirety.

---

[8] Finally, contrary to Judge Griffen's argument, Response at 37 n.14, the Court must dismiss Judge Griffen's request for attorneys' fees. Judge Griffen relies on *Hutto v. Finney*, 437 U.S. 678 (1978), for the proposition that Congress may authorize an award of attorneys' fees under Section 1983. But this is not responsive to Defendants' argument that Congress has expressly *declined* to authorize an award of attorneys' fees where, as here, the action is brought against judicial officers who did not act clearly in excess of their jurisdiction. 42 U.S.C. § 1988(b); *see* Goodson Motion at 33 n.3.

Dated: January 23, 2018                    Respectfully submitted,

*/s/ Matt Keil*                            */s/ David H. Thompson*
Matt Keil                                  David H. Thompson
 Arkansas Bar No. 86099                     D.C. Bar No. 450503
KEIL & GOODSON, PA                         Michael W. Kirk
406 Walnut Street                           D.C. Bar No. 424648
Texarkana, AR 71854                        William C. Marra
(870) 772-4113                              D.C. Bar No. 1019098
mkeil@kglawfirm.com                        COOPER & KIRK, PLLC
                                           1523 New Hampshire Ave., N.W.
                                           Washington, D.C. 20036
                                           (202) 220-9600
                                           dthompson@cooperkirk.com

           *Attorneys for Defendant The Honorable Courtney Hudson Goodson*

                                           */s/ Robert S. Peck*
                                           Robert S. Peck, N.Y. Bar No. 1635333
                                           CENTER FOR CONSTITUTIONAL LITIGATION,
                                           P.C.
                                           One Riverside Park
                                           50 Riverside Boulevard, Suite 12A
                                           New York, NY 10069
                                           Tel. (202) 944-2874
                                           Fax (646) 365-3382
                                           robert.peck@cclfirm.com

     *Attorney for Defendants Supreme Court of Arkansas, The Honorable John Dan Kemp,*
        *The Honorable Robin F. Wynne, and The Honorable Shawn A. Womack*

A.F. "Tom" Thompson, III                   */s/ Robert L. Henry, III*
Arkansas Bar Number 77133                  Robert L. Henry, III
Kenneth P. "Casey" Castleberry             Arkansas Bar Number 72054
Arkansas Bar Number 2003109                BARBER LAW FIRM, PLLC
MURPHY, THOMPSON, ARNOLD,                   3400 Simmons Tower
SKINNER & CASTLEBERRY                      425 West Capitol Avenue
555 East Main Street, Suite 200            Little Rock, Arkansas 72201
Post Office Box 2595                       (501) 372-6175
Batesville, Arkansas 72503                 rhenry@barberlawfirm.com
(870) 793-3821
aftomt2001@yahoo.com
caseycastleberry2003@yahoo.com

            *Attorneys for Defendant The Honorable Josephine L. Hart*

24

*/s/ Timothy O. Dudley*
Timothy O. Dudley
Arkansas Bar Number 82055
TIM DUDLEY, LTD.
114 South Pulaski
Little Rock, Arkansas 72201
(501) 372-0080
todudley@swbell.net

*Attorney for Defendant The Honorable Karen R. Baker*

*/s/ Cristopher O. Murray*
Christopher O. Murray
David B. Meschke
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
cmurray@bhfs.com
dmeschke@bhfs.com

*Attorneys for Defendant the Honorable Rhonda K. Wood*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2018, I electronically filed the foregoing document with the Clerk of Court through the CM/ECF system for service this day via transmission of Notice of Electronic Filing generated by ECF to all counsel of record.


*/s/David H. Thompson*
David H. Thompson