# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1864
_____

In re: Honorable John Dan Kemp; Honorable Robin F. Wynne; Honorable Courtney Hudson-Goodson; Honorable Josephine L. Hart; Honorable Shawn A. Womack; Honorable Karen R. Baker; Honorable Rhonda K. Wood

*Petitioner*s
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: April 25, 2018
Filed: July 2, 2018

4:17-cv-00639-JM

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

     The Honorable Wendell Griffen, an Arkansas trial judge, sued the Arkansas Supreme Court and Justices John Dan Kemp, Robin F. Wynne, Courtney Hudson Goodson, Josephine L. Hart, Shawn A. Womack, Karen R. Baker, and Rhonda K. Wood, in their official capacities, alleging they violated his constitutional rights by permanently barring him from presiding over death penalty cases. The district court dismissed the claims against the Arkansas Supreme Court as barred by sovereign immunity. The court denied the Justices' motions to dismiss. The Justices now petition this court for a writ of mandamus, to direct the district court to dismiss Judge Griffen's complaint with prejudice. Having jurisdiction under 28 U.S.C. § 1651(a),

this court grants the writ, vacates the district court's order denying the Justices' motions to dismiss, and directs the district court to dismiss Judge Griffen's complaint.

I.

In 2010, Judge Griffen, an African-American and ordained Baptist minister, was elected as a judge on the Sixth Judicial Circuit of Arkansas (the Fifth Division). In 2016, he was reelected to a six-year term.

On April 10, 2017, Judge Griffen wrote a blog post stating, in part:

Premeditated and deliberate killing of defenseless persons—including defenseless persons who have been convicted of murder—is not morally justifiable. Using medications designed for treating illness and preserving life to engage in such premeditated and deliberate killing is not morally justifiable.

Any morally unjustified and unjustifiable killing produces moral injury. Beginning a week from today, and three days after Good Friday—on Monday, April 17—the political, religious, commercial, and social captains of empire in Arkansas will commence a series of morally unjustified and unjustifiable killings. Each death will be a new, and permanent, moral injury. These deaths will join the existing long list of atrocities, oppression, and other moral injuries associated with our state to cause people around the world to associate Arkansas with bigotry, hate, and other forms of injustice as long as human memory continues.

On April 14 (Good Friday), Judge Griffen participated in an anti-death penalty rally on the steps of the Arkansas Capitol. Later that day, he attended a prayer vigil with his church outside the Arkansas Governor's Mansion. During the vigil, he "laid on a cot in solidarity with Jesus."

Also on April 14, McKesson Medical-Surgical, Inc., a distributor of the drug vercuronium bromide, sued the State of Arkansas, the Arkansas Department of Correction, Arkansas Governor Asa Hutchinson (in his official capacity), and the Director of the Arkansas Department of Correction (in her official capacity), alleging they obtained the drug under false pretenses, intentionally failing to disclose its use in upcoming executions. McKesson sought a temporary restraining order, preventing the state from using the drug and seeking its return. The case was assigned to Judge Griffen. That day, he issued a TRO prohibiting defendants from "us[ing] the vercuronium bromide obtained from Plaintiff until ordered otherwise by this Court."

The next day, the Arkansas Attorney General (on behalf of the *McKesson* defendants) filed an emergency petition for writ of mandamus with the Arkansas Supreme Court, seeking to vacate the TRO and remove Judge Griffen from the case. The petition said:

> Judge Griffen cannot be considered remotely impartial on issues related to the death penalty. Judge Griffen has demonstrated that he is unlikely to refrain from actual bias regarding matters related to the death penalty, and at a minimum, he cannot avoid the appearance of unfairness and his impartiality might reasonably be questioned. *See* Arkansas Code of Judicial Conduct Rules 1.2, 2.2, 2.3(A), 2.10(A), 2.10(B), 2.11(A).

Rule 2.11(A)(5) of the Arkansas Code of Judicial Conduct states:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

Citing Rule 2.11, the Arkansas Supreme Court issued a per curiam order (Order No. 17-155), to "immediately reassign all cases in the Fifth Division that involve the death penalty or the state's execution protocol, whether civil or criminal," including all "future cases involving this subject matter." The order also referred Judge Griffen "to the Judicial Discipline and Disability Commission to consider whether he has violated the Code of Judicial Conduct."

Five months later, Judge Griffen sued the Arkansas Supreme Court and the Justices in federal court, alleging First Amendment retaliation, violation of the Arkansas Religious Freedom Restoration Act, denial of his procedural due process rights, violation of his equal protection rights, and civil conspiracy. The defendants moved to dismiss, arguing no plausible claims for relief. The district court dismissed the claims against the Arkansas Supreme Court as barred by sovereign immunity. It also held that Judge Griffen was "precluded from seeking injunctive relief against the individual Justices in their official capacities pursuant to Section 1983." However, without analysis, it denied the Justices' motions to dismiss, ruling that "the Court cannot state that Plaintiff has failed to state plausible claims for relief."

On April 13, 2018, Judge Griffen sought discovery on "All Documents and Communications regarding" Judge Griffen, his conduct in death penalty cases, his religion or race, his public statements about the death penalty, his participation in anti-death penalty rallies, his "fitness or perceived fitness to serve as a judge," his grant of the TRO, his potential impeachment, the Arkansas Attorney General's request for his recusal, and the Supreme Court's issuance of Order 17-155. (The district court later stayed discovery, pending the outcome of this petition).

On April 24, the Justices petitioned this court for a writ of mandamus, to vacate the district court's order denying their motions to dismiss and order dismissal of all claims with prejudice.

## II.

"Extraordinary writs like mandamus are 'useful safety valves for promptly correcting serious errors.'" *In re Lombardi*, 741 F.3d 888, 893 (8th Cir. 2014) (en banc), *quoting* ***Mohawk Indus., Inc. v. Carpenter***, 558 U.S. 100, 111 (2009). However, "'only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion' will justify the invocation of the extraordinary remedy of mandamus." *Id.* at 893-94, *quoting* ***Cheney v. United States Dist. Court for D.C.***, 542 U.S. 367, 380 (2004). To grant a writ of mandamus, this court weighs three factors: (1) the "petitioning party must satisfy the court that he has 'no other adequate means to attain the relief he desires;'" (2) "his entitlement to the writ is 'clear and indisputable;'" and (3) "'the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *Id.* at 894, *quoting* ***Cheney***, 542 U.S. at 380-81.

The Justices argue that subjecting "internal deliberations in a judicial matter to discovery will evade appellate review" and "threaten[] judicial independence and federalism." While these concerns are "significant and complex," this court "express[es] no view on them, because it is clear and indisputable that the discovery" sought by Judge Griffen "is not relevant to any claim that should survive a motion to dismiss." *Id.* at 895. "Although denial of a motion to dismiss ordinarily is not appealable, a writ of mandamus to correct an erroneous denial may be warranted in extraordinary circumstances where continued litigation would have significant unwarranted consequences." *Id.* "Discovery orders likewise are not ordinarily appealable, but mandamus may issue in extraordinary circumstances to forbid discovery of irrelevant information, whether or not it is privileged, where discovery would be oppressive and interfere with important state interests." *Id.* "These propositions taken together, along with the unavailability of alternative means for . . . relief, lead [this court] to conclude that a writ should issue." *Id.*

Judge Griffen asserts six claims: (1) "First Amendment Retaliation on the Basis of Speech;" (2) "First Amendment Retaliation on the Basis of Religious Exercise;" (3) "Violation of the Arkansas Religious Freedom Restoration Act;" (4) "Denial of Procedural Due Process;" (5) "Violation of the Equal Protection Clause;" and (6) "Civil Conspiracy in Violation of 42 U.S.C. § 1985." None of these states a plausible claim for relief.

A.

Judge Griffen alleges that by permanently barring him from all death penalty cases, the Arkansas Supreme Court "retaliated against Judge Griffen for exercising his First Amendment right to free speech." A First Amendment retaliation claim must allege: (1) the plaintiff "engaged in a protected activity," (2) "the government official took adverse action" against the plaintiff "that would chill a person of ordinary firmness from continuing in the activity," and (3) "the adverse action was motivated at least in part by the exercise of the protected activity." ***Revels v. Vincenz***, 382 F.3d 870, 876 (8th Cir. 2004).

The free speech claim fails for two reasons. First, Judge Griffen does not allege he engaged in a protected activity. The recusal order applies to him in his role as a public employee. *See **Bauer v. Shepard***, 620 F.3d 704, 718 (7th Cir. 2010) ("The recusal clause applies to a judge in his role as public employee."). It thus specifies how he "will perform official duties," or rather, to which duties he is assigned. *Id.* Citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Seventh Circuit held that "[t]he state, as employer, may control how its employees perform their work, even when that work includes speech (as a judge's job does)." *Id.* Therefore, the state also may "assign to each lawsuit a judge who has not made any statement that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy." *Id.* (internal quotation marks omitted). *See **Ligon v. City of New York***, 736 F.3d 166, 169 n.8 (2d Cir. 2013) ("The

freedom of speech protected by the First Amendment does not mean that there can be no limitations, such as those contemplated under section 455(a), on what a federal judge may say, much less on where she can say it, especially as it relates to pending litigation. As discussed in our accompanying opinion, numerous courts of appeals have reassigned cases due to an appearance of partiality that was traceable to speech by a district judge.").

Second, there is no adverse employment action. An "adverse employment action must be one that produces a material employment disadvantage," such as "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects," or "circumstances amounting to a constructive discharge." **Kerns v. Capital Graphics, Inc.**, 178 F.3d 1011, 1016 (8th Cir. 1999) (internal quotation marks omitted). "Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action." *Id.* at 1016-17. Recusal from death penalty cases is not an adverse employment action. *See* **Bauer**, 620 F.3d at 718 ("No public employee is entitled to do any particular task; a state may select the employee who can best do the job. . . . [A] state may decide to assign each case to a judge whose impartiality is not in question. . . . States are entitled to protect litigants by assigning impartial judges before the fact, as well as by removing partial judges afterward.").

Judge Griffen does not plausibly allege a free speech claim. The district court erred in allowing this claim to proceed.

B.

Judge Griffen claims the "permanent reassignment in Order No. 17-155 chills [his] religious exercise." Yet, nothing in the order affects his right to practice religion. "The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides

-7-

that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*'" ***Employment Div., Dep't of Human Res. of Oregon v. Smith***, 494 U.S. 872, 876-77 (1990) (internal citation omitted), *quoting* **U.S. Const., Amdt. 1**. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." ***Id.*** at 877. "The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." ***Id.*** (internal citations omitted).

Order 17-155 does not prohibit Judge Griffen's free exercise of religion: it does not "compel affirmation of religious belief," "punish the expression of religious doctrines," "impose special disabilities on the basis of religious views," or "lend its power to one or the other side in controversies over religious authority." ***Id.*** Rather, the order reflects neutral principles applicable to all judges who exhibit potential for bias. *See* ***Olsen v. Mukasey***, 541 F.3d 827, 832 (8th Cir. 2008) ("Absent evidence of an intent to regulate religious worship, a law is a neutral law of general applicability.") (internal quotation marks omitted). This does not violate the free exercise clause. *See* ***Cornerstone Bible Church v. City of Hastings***, 948 F.2d 464, 472 (8th Cir. 1991) (holding that in *Smith*, 494 U.S. at 879, "the Court held that a neutral law of general applicability that incidentally impinges on religious practice will not be subject to attack under the free exercise clause"). Additionally, Judge Griffen does not allege the order has an anti-religious purpose or was intended to regulate religious worship. *See* ***id.*** Thus, it is "properly viewed as a neutral law of general applicability" that does not offend the free exercise clause. ***Id.***

Judge Griffen does not plausibly allege a free exercise claim. The district court erred in allowing this claim to proceed.

C.

Judge Griffen asserts a violation of the Arkansas Religious Freedom Restoration Act (RFRA) which prohibits the government from substantially burdening "a person's exercise of religion" unless the burden is "[t]he least restrictive means of furthering [a] compelling governmental interest." **Ark. Code Ann. § 16-123-404(a)(2)**. The Arkansas RFRA is "interpreted consistent with the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, federal case law, and federal jurisprudence." **Ark. Code Ann. § 16-123-402(2)**.

Even assuming that Order 17-155 substantially burdens Judge Griffen's exercise of religion, the claim fails. Arkansas has compelling interests in the impartiality of the judiciary and in public perception of an impartial judiciary. *Cf.* ***Williams-Yulee v. Florida Bar***, 135 S. Ct. 1656, 1666 (2015) ("The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. . . . The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. . . . It follows that public perception of judicial integrity is a state interest of the highest order.") (internal citations and quotation marks omitted); ***Caperton v. A.T. Massey Coal Co., Inc.***, 556 U.S. 868, 889 (2009) (recognizing "a vital state interest" in safeguarding "public confidence in the fairness and integrity of the nation's elected judges"); ***Mistretta v. United States***, 488 U.S. 361, 407 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."); ***Platt v. Board of Comm'rs on Grievances & Discipline of Ohio Supreme Court***, 2018 WL 3097582, at *12 (6th Cir. June 25, 2018) (holding that "maintaining judges' actual independence and impartiality, and maintaining the public's trust in the judiciary's independence and impartiality" are "compelling" interests); ***French v. Jones***, 876 F.3d 1228, 1237 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1598 (2018) (holding that "an interest in both actual and perceived judicial impartiality" is a "genuine and compelling" interest). Judge Griffen does not allege any less restrictive means of

furthering this compelling interest. The district court erred in allowing this claim to proceed.

### D.

Judge Griffen alleges the Arkansas Supreme Court violated his due process rights by depriving him of his "constitutionally-protected property interest in his ability to discharge" his duties as a judge and his "constitutionally-protected liberty interest in his reputation and his good name." To state a claim for procedural due process, a plaintiff must show "a deprivation of life, liberty, or property without sufficient process." ***Hughes v. City of Cedar Rapids***, 840 F.3d 987, 994 (8th Cir. 2016).

Judge Griffen alleges no cognizable life, liberty, or property interest. He asserts a property interest in discharging the responsibilities of his office. "A protected property interest must be derived from a source independent of the Constitution, such as state law." ***Buchanan v. Little Rock Sch. Dist. of Pulaski Cty.***, 84 F.3d 1035, 1038 (8th Cir. 1996). While he has a property interest in his employment as a state judge in Arkansas, he does not allege the source of his property interest in presiding over specific types of cases. *See id.* at 1039-40 (holding no due process violation when a principal was reassigned to an administrative post without a hearing because he "had no property interest in a particular assignment"). To the contrary, Judge Griffen has no right to hear specific categories of cases. *See* **Ark. Const. amend. LXXX, § 6** (establishing circuit courts "as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution," but not establishing that a particular judge has a right to hear specific cases); **Ark. Const. amend. LXXX, § 4** ("The Supreme Court shall exercise general superintending control over all courts of the state."); ***Parker v. Crow***, 368 S.W.3d 902, 906 (Ark. 2010) ("Superintending control is an extraordinary power that is hampered by no specific rules or means."). *See also* ***Ligon***, 736 F.3d at 169 n.8

("[T]he Due Process Clause of the Fifth Amendment is inapplicable in these circumstances, because reassignment of a case is not a legal injury to the district judge."). *Cf.* **Nevada Comm'n on Ethics v. Carrigan**, 564 U.S. 117, 126 (2011) ("The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it.").

Even if Judge Griffen had a property interest in discharging his job duties, those duties do not include presiding over cases where he has actual or apparent bias. Judge Griffen claims he has the right to "discharge those aspects of his position that are set forth in the Arkansas Constitution and that voters elected him to discharge." But the voters elected him to discharge powers circumscribed by Arkansas law. And Arkansas law states: "No judge of the circuit court shall sit on the determination of any case in which he or she is interested in the outcome . . . or is otherwise disqualified under the Arkansas Code of Judicial Conduct." **Ark. Code Ann. § 16-13-214**. The Arkansas Code of Judicial Conduct prohibits a judge from presiding over "any proceeding in which the judge's impartiality might reasonably be questioned." **Ark. Code Jud. Conduct 2.11(A)**.

Judge Griffen also asserts a liberty interest in "his reputation and his good name as it relates to his duties as an elected circuit court judge." But neither his status as a judge nor his reputation is affected by recusal. *See* **Ligon**, 736 F.3d at 169 n.8 ("[T]he Due Process Clause of the Fifth Amendment is inapplicable in these circumstances, because . . . . we have made no finding of judicial misconduct that a judge might have the right to contest."). Even if forced recusal affected his reputation, this would be insufficient to allege a due process violation because an interest in reputation alone "is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." **Paul v. Davis**, 424 U.S. 693, 712 (1976).

Judge Griffen does not plausibly allege a due process claim. The district court erred in allowing this claim to proceed.

E.

Judge Griffen asserts that Order 17-155 violates his "rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in that he has been afforded less favorable terms and conditions of his employment as a state circuit court judge on the basis of his race (African-American)." He then provides four examples "where white Circuit Court Judges have been accused of and have admitted to committing criminal acts" and "the Arkansas Supreme Court did not take the extraordinary steps against these white judges as it has against Judge Griffen."

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." ***Klinger v. Dep't of Corr.***, 31 F.3d 727, 731 (8th Cir. 1994), *citing* ***City of Cleburne v. Cleburne Living Ctr., Inc.***, 473 U.S. 432, 439 (1985). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." ***Id.*** "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." ***Id.*** Judge Griffen fails to allege he "was treated differently than others who were similarly situated." ***Id.*** Judge Griffen admits that he "did not engage in conduct that was remotely similar to that allegedly committed by" the comparison judges. Because "[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" Judge Griffen does not state a claim. ***Id.***

To state a plausible equal-protection violation, Judge Griffen also must allege an intent to discriminate. *See* ***Foster v. Wyrick***, 823 F.2d 218, 221 (8th Cir. 1987) ("Proof of discriminatory racial purpose is required to establish an equal protection violation."). He does not. Instead, he makes conclusory allegations that he was "afforded less favorable terms and conditions of his employment with the State of

-12-

Arkansas on account of his race, than similarly situated white judges." This is insufficient to establish racial animus. *Id.* ("[A]ppellant's allegation that MSP's employment practices and procedures have a discriminatory impact on black inmates fails to state a cause of action under the Equal Protection Clause, because there is no allegation of intentional discrimination."). *See* **Henley v. Brown**, 686 F.3d 634, 642 (8th Cir. 2012) ("In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim.").

Judge Griffen does not plausibly allege an equal protection claim. The district court erred in allowing this claim to proceed.

F.

Judge Griffen claims the Justices "conspired among themselves and with others for the purpose of depriving" him of his constitutional rights. "Absent a constitutional violation, 'there is no actionable conspiracy claim.'" **Slusarchuk v. Hoff**, 346 F.3d 1178, 1183 (8th Cir. 2003), *quoting* **Cook v. Tadros**, 312 F.3d 386, 388 (8th Cir. 2002). Judge Griffen has failed to allege a plausible constitutional violation to support a claim for civil conspiracy as required by 42 U.S.C. § 1985(3). The district court erred in allowing this claim to proceed.

\* \* \* \* \* \* \*

This court grants the petition for a writ of mandamus and vacates the district court's order denying the Justices' motions to dismiss. The case is remanded for proceedings consistent with this opinion.

KELLY, Circuit Judge, dissenting.

If the petitioners were seeking mandamus to quash a discovery order that would compel disclosure of the internal deliberations of the Arkansas Supreme Court, their petition would be well taken. But that is not what the petitioners seek. Instead, they ask for—and the court today grants them—reversal of the district court's denial of their motion to dismiss. See Fed. R. Civ. P. 12(b)(6). The petitioners did not ask the district court to limit the scope of discovery, see Fed. R. Civ. P. 26(b)(1), (c), or to shield disclosed records from public view, see Fed. R. Civ. P. 5.2(d). They only asked the district court to dismiss Judge Griffen's suit on the merits. Mandamus is appropriate only when the petitioners "have no other adequate means to attain the relief [they] desire[]." Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380 (2004) (quoting Kerr v. U. S. Dist. Court for N. Dist. of Cal., 426 U.S. 394, 403 (1976)). Because the petitioners have not attempted to exhaust their "adequate means" in the district court, I cannot conclude that mandamus is "the *only* means of forestalling intrusion by the federal judiciary on a delicate area of federal-state relations." Will v. United States, 389 U.S. 90, 95 (1967) (emphasis added). Therefore, I respectfully dissent from the grant of mandamus.

———————————————

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 02, 2018

Mr. Robert S. Peck
CENTER FOR CONSTITUTIONAL LITIGATION
Suite 152
455 Massachusetts Avenue, N.W.
Washington, DC  20001

      RE: 18-1864  In Re: Honorable John Kemp, et al

Dear Counsel:

      Enclosed is a copy of an opinion issued today in the above matter.

                              Michael E. Gans
                              Clerk of Court

MDS

Enclosure(s)

cc:     Mr. Kenneth P. Castleberry
         Mr. Timothy Oliver Dudley
         Mr. Robert L. Henry III
         Mr. Matt Keil
         Mr. Michael W. Kirk
         Ms. Rachel E. Kramer
         Mr. Michael J. Laux
         Mr. William C. Marra
         Mr. Michael P. Matthews
         Mr. Jim McCormack
         Mr. David B. Meschke
         Mr. Christopher O. Murray
         Mr. Austin Porter Jr.
         Mr. Alfred F. Thompson III
         Mr. David H. Thompson

      District Court/Agency Case Number(s):   4:17-cv-00639-JM

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 02, 2018

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE: 18-1864 In Re: Honorable John Kemp, et al

Dear Sirs:

  An opinion was filed today in the above case.

  Counsel who represented defendant-petitioners Honorable John Dan Kemp; Honorable Robin F. Wynne; was Robert S. Peck, of Washington, DC.

  Counsel who represented defendant-petitioner Honorable Courtney Hudson-Goodson was Matt Keil, of Texarkana, AR; Michael W. Kirk, of Washington, DC; William C. Marra, of Washington, DC; and Robert S. Peck, of Washington, DC.

  Counsel who represented defendant-petitioner Honorable Josephine L. Hart was Kenneth P. Castleberry, of Basteville, AR; Robert L. Henry, III, of Little Rock, AR; Robert S. Peck, of Washington, DC; Alred F. Thompson, III, of Batesville, AR.

  Counsel who represented defendant-petitioner Honorable Shawn A. Womack was Robert S. Peck, of Washington, DC.

  Counsel who represented defendant-petitioner Honorable Karen R. Baker was timothy Oliver Dudley, of Little Rock, AR; Robert S. Peck, of Washington, DC.

  Counsel who represented defendant-petitioner Honorable Rhonda K. Wood was David B. Meschke, of Denver, CO; Christopher O. Murray, of Denver, CO; Robert S. Peck, of Washington, DC.

  Counsel for plaintiff-real party in interest Honorable Wendell Griffen, was Michael J. Laux, of Little Rock, AR; Austin Porter, Jr., of Little Rock, AR; Michael P. Matthews, of Tampa, FL; Rachel E. Kramer, of New York, NY

  The judge who heard the case in the district court was Honorable James M. Moody, Jr.. The judgment of the district court was entered on April 24, 2018.

If you have any questions concerning this case, please call this office.

Michael E. Gans  
Clerk of Court

MDS

Enclosure(s)

cc:  Lois Law  
    MO Lawyers Weekly

    District Court/Agency Case Number(s):   4:17-cv-00639-JM



**18-1864 In Re: Honorable John Kemp, et al "Signed Opinion Filed" (4:17-cv-00639-JM)**

ca08ml_cmecf_Notify  to:  07/02/2018 09:54 AM

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 07/02/2018

| | |
|---|---|
| **Case Name:** | In Re: Honorable John Kemp, et al |
| **Case Number:** | 18-1864 |
| **Document(s):** | Document(s) |

**Docket Text:**
OPINION FILED - THE COURT: Steven M. Colloton, Duane Benton and Jane Kelly AUTHORING JUDGE:Duane Benton (PUBLISHED),
DISSENT BY: Jane Kelly; Granting [4653954-2] petition for writ of mandamus filed by Petitioners Honorable John Dan Kemp, Honorable Robin F. Wynne, Honorable Courtney Hudson-Goodson, Honorable Josephine L. Hart, Honorable Shawn A. Womack, Honorable Karen R. Baker and Honorable Rhonda K. Wood. [4678114] [18-1864] (Michael Shay)

**Notice will be electronically mailed to:**

Mr. Kenneth P. Castleberry: caseycastleberry2003@yahoo.com, whitneylwill91@gmail.com
Mr. Timothy Oliver Dudley: todudley@swbell.net
Mr. Robert L. Henry, III: rhenry@barberlawfirm.com, cweatherford@barberlawfirm.com, tracy.king@barberlawfirm.com
Mr. Matt Keil: mkeil@kglawfirm.com
Mr. Michael W. Kirk: mkirk@cooperkirk.com
Ms. Rachel E. Kramer: rkramer@foley.com
Mr. Michael J. Laux: mlaux@walkuplawoffice.com, slaux11@yahoo.com
Mr. William C. Marra: wmarra@cooperkirk.com
Mr. Michael P. Matthews: mmathews@foley.com
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. David B. Meschke: dmeschke@bhfs.com, pchesson@bhfs.com
Mr. Christopher O. Murray: cmurray@bhfs.com, pchesson@bhfs.com

Mr. Robert S. Peck: robert.peck@cclfirm.com, amy.brogioli@justice.org
Mr. Austin Porter, Jr.: Aporte5640@aol.com
Mr. Alfred F. Thompson, III: aftomt2001@yahoo.com
Mr. David H. Thompson: dthompson@cooperkirk.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com


The following document(s) are associated with this transaction:
**Document Description:** opinion filed
**Original Filename:** 181864P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/02/2018] [FileNumber=4678114-0]
[b57d65f379e8fe3444eddd25def9c7956ec22b8774b7e937127ba16cad3f1b2be6ed493cccba9ee3
e38e4c6f252c770462fa196899e2ff1cf12dabf68dddfb12]]

**Document Description:** Counsel Opinion Letter
**Original Filename:**
/opt/ACECF/live/forms/MichaelShay_181864_4678114_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/02/2018] [FileNumber=4678114-1]
[a9f2a4165f59e53b97d1069477d0e73c04331adfbfe24ffc98564229044db63a05ab92012f166edf6
468dd984139bce24cd848217499b13af2a639ea90a133a4]]
**Recipients:**
- Mr. Kenneth P. Castleberry
- Mr. Timothy Oliver Dudley
- Mr. Robert L. Henry, III
- Mr. Matt Keil
- Mr. Michael W. Kirk
- Ms. Rachel E. Kramer
- Mr. Michael J. Laux
- Mr. William C. Marra
- Mr. Michael P. Matthews
- Mr. Jim McCormack, Clerk of Court
- Mr. David B. Meschke
- Mr. Christopher O. Murray
- Mr. Robert S. Peck
- Mr. Austin Porter, Jr.
- Mr. Alfred F. Thompson, III
- Mr. David H. Thompson

**Document Description:** Letter To Publishing
**Original Filename:**
/opt/ACECF/live/forms/MichaelShay_181864_4678114_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/02/2018] [FileNumber=4678114-2]
[b85b7de0581dd235b711217c6cb032090ac602299bada557c7541ab68c2f27b445eb57115b62eea

1293e5ccfe4a27bba03c59b04ddabc190e7c4b8d8d07fc017]]
**Recipients:**
- MO Lawyers Weekly
- West Publishing

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 4678114
**RELIEF(S) DOCKETED:**
  for publication
  dissent
  for writ of mandamus
**DOCKET PART(S) ADDED:** 6079013, 6079014, 6079015, 6079016, 6033315